## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHAD MCCLOSKEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-148-GMS |
| | ) | |
| PERRY PHELPS, Warden, and | ) | |
| ATTORNEY GENERAL OF | ) | |
| THE STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents.[1] | ) | |

Chad McCloskey. *Pro se* petitioner.

Paul R. Wallace, Chief of Appeals, Delaware Department of Justice, Wilmington, Delaware.
Counsel for Respondents.

## MEMORANDUM OPINION

_____ Feb 1 5 ____, 2013
Wilmington, Delaware

_____

[1]Warden Perry Phelphs replaced former Warden Mike Deloy, an original party to this
case. *See* Fed. R. Civ. P. 25(d).

Sleet, Chief Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 filed by petitioner Chad McCloskey ("McCloskey"). (D.I. 2) For the reasons discussed,

the court will deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

McCloskey and his friend, Jason Scott, engaged in a two-month crime spree, during

which they broke into homes, garages, and barns in Sussex County, near where they both lived.

*See McCloskey v. State*, 966 A.2d 348 (Table), 2009 WL 188857 (Del. Jan. 27, 2009). They

stole everything from ATVs and go-carts to fishing rods and clothing. At one location, for

example, the two men tore an upstairs toilet off the wall, causing the water to overflow and

destroy the first floor walls and ceiling. *Id.*

In December 2006, McCloskey was arrested and subsequently indicted on an eighty-one

count indictment charging him with, *inter alia*, three counts of second degree burglary; six

counts of third degree burglary; six counts of second degree forgery; eleven counts of theft of a

motor vehicle; fifteen counts of felony theft; ten counts of second degree conspiracy; ten counts

of misdemeanor theft; six counts of unlawful use of a credit card; seven counts of criminal

mischief (two felony and four misdemeanor); three counts of criminal trespass; and one count

each of possession of a deadly weapon by a person prohibited, theft of a firearm, receiving stolen

property, and resisting arrest. (D.I. 15) In June 2007, McCloskey was tried before a jury in the

Delaware Superior Court. During the trial, the Superior Court granted the State's motion to

amend the indictment; however, the trial ended in a mistrial on July 2, 2007. *Id.* On July 11,

2007, McCloskey, through counsel, filed a motion to dismiss. A hearing on the motion was held

1

on September 21, 2007. *Id.* The Superior Court denied the motion to dismiss on November 19, 2007, after reviewing supplemental memoranda filed by both parties. A jury was selected on November 26, 2007, and the second trial commenced. During the trial, the State and defense submitted a stipulated order, in which the parties agreed to amend six counts and the State would enter a *nolle prosequi* on four counts. On December 4, 2007, the jury returned its verdict and McCloskey was convicted of sixty-two counts, four of which were dropped by the State pursuant to the stipulated order. *Id.*

McCloskey filed a motion for judgment of acquittal, which the Superior Court denied on January 4, 2008. *Id.* However, the Superior Court dismissed an additional seven counts for which the jury had convicted McCloskey, thus reducing the number of his convictions to fifty-one. McCloskey was sentenced to more than eleven years at Level V incarceration, followed by decreasing levels of probation. *See McCloskey*, 2009 WL 188857, at *1. The Delaware Supreme Court affirmed McCloskey's convictions and sentence on direct appeal. *Id.* at *2.

In June 2009, McCloskey filed a motion for post-conviction relief under Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), which the Superior Court denied. *See State v. McCloskey*, ID No. 062005942, Letter Order (Del. Super. Ct. Sept. 18, 2009). McCloskey did not appeal that decision.

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).

2

Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only

"on the ground that he is in custody in violation of the Constitution or laws or treaties of the

United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards

for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to

ensure that state-court convictions are given effect to the extent possible under law." *Bell v.

Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the
>    applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to

give "state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at

844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the

exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the

3

state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless,* 172 F.3d at 260; *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner

4

demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[2] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief

---

[2]A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

has been denied." *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011). As recently

explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim

on the merits in the absence of any indication or state-law procedural principles to the contrary."

*Id.*

    If the state's highest court has not adjudicated a federal habeas claim on the merits, but

the claim is exhausted and the merits are properly before the federal court on habeas review, then

the federal court must review the claim *de novo*. *See Breakiron v. Horn*, 642 F.3d 126, 131 (3d

Cir. 2011)(citing *Porter v. McCollum*, 558 U.S. 30 (Jan. 19, 2011)). *De novo* review means that

the court "must exercise its independent judgment when deciding both questions of constitutional

law and mixed constitutional questions." *Williams*, 529 U.S. at 400 (2000)(O'Connor, J.,

concurring).

    Finally, whether reviewing a habeas claim *de novo* or under § 2254(d), a federal court

must presume that the state court's determinations of factual issues are correct. 28 U.S.C. §

2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and

implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary.

28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v.

Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1)

applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies

to factual decisions).

## III. DISCUSSION

    McCloskey's timely filed petition asserts the following three grounds for relief:

(1) defense counsel provided ineffective assistance by failing to question alibi witnesses, failing

6

to locate and question an eye witness, failing to obtain McCloskey's medical records, and failing

to disclose discovery to him; (2) his due process rights were violated when the State knowingly

permitted its witness, Jason Scott, to commit perjury; and (3) the trial court's erroneous

admission of hearsay violated his due process rights. The court will review these claims *in

seriatim.*

### A. Claim One: Ineffective Assistance of Counsel

The record reveals that McCloskey did not exhaust state remedies for claim one. For

instance, although McCloskey raised claim one's ineffective assistance allegations to the

Delaware Supreme Court during his direct appeal, that presentation did not exhaust state

remedies for federal habeas purposes because the Delaware Supreme Court cannot consider

ineffective assistance of counsel claims for the first times on direct appeal. *See Smith v. State,*

913 A.2d 1197, 1239 (Del. 2006); *Waples v. Phelps*, 2008 WL 1743400, at *2 (D. Del. Apr. 16,

2008). And, although McCloskey then presented claim one to the Superior Court in his Rule 61

motion, he did not exhaust state remedies because he failed to appeal the Superior Court's denial

of the claim to the Delaware Supreme Court.

At this juncture, any attempt by McCloskey to return to the Delaware state courts in order

to exhaust state remedies would be barred under Delaware Superior Court Criminal Rule 61(i)(1)

as time-barred, and barred under Rule 61(i)(2) as repetitive. *See Lawrie v. Snyder*, 9 F. Supp. 2d

428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior

proceeding). In these circumstances, the court must treat the claim as exhausted but procedurally

defaulted, meaning that the court cannot review the merits of claim one absent a showing of

cause and prejudice, or that a miscarriage of justice will result without such review.

McCloskey does not allege, and the court cannot discern, any cause for his failure to appeal the Delaware Superior Court's denial of his Rule 61 motion. In the absence of cause, the court will not address the issue of prejudice. Moreover, the court concludes that McCloskey's failure to present claim one to the Delaware Supreme Court should not be excused under the "miscarriage of justice" exception to the procedural default doctrine, because he has failed to provide "new reliable evidence" of his actual innocence. Accordingly, the court will deny claim one as procedurally barred.

### B. Claim Two: State Witness Committed Perjury

In claim two, McCloskey contends that his due process rights were violated when the State knowingly permitted witness and co-conspirator Jason Scott to commit perjury while testifying during the trial. McCloskey raised this same argument on direct appeal, and the Delaware Supreme Court denied it as meritless. Thus, habeas relief will only be warranted if the court concludes that the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

Perjury is defined as giving "false testimony [while under oath] concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). In order to establish a due process violation stemming from the use of perjured testimony, a defendant must show that (1) the witness committed perjury; (2) the government knew or should have known of his perjury; (3) the testimony went uncorrected; and (4) there is a reasonable likelihood that the false testimony could have affected the verdict." *See Lambert v. Blackwell*, 387 F.3d 210, 242 (3d Cir. 2004); *see also United States v. Agurs*, 427 U.S. 97, 103 (1976).

According to McCloskey, the State knowingly permitted Scott to perjure himself during the second trial by letting him testify that: (1) he was living with McCloskey when the crimes were committed; (2) McCloskey was involved in the crimes, which contradicted the sworn statement Scott made prior to both trials that McCloskey was not involved in the crimes; and (3) he recognized McCloskey's handwriting in a letter written to Scott during his incarceration, which contradicted Scott's testimony during the first trial that he did not recognize the handwriting. The Delaware Supreme Court rejected these same contentions on direct appeal and held that McCloskey's due process rights were not violated, because there was "no evidence that Scott gave false testimony, or that the State knowingly suborned perjury." *McCloskey*, 2009 WL 188857, at *2. More specifically, the Delaware Supreme Court explained that

> Scott's testimony at the two trials was not entirely consistent, and McCloskey explored the inconsistencies in an effort to undermine Scott's credibility. But there is nothing in this record to suggest that the State acted improperly in calling Scott as a witness or in eliciting any of his testimony.

*Id.*

As an initial matter, the court concludes that the Delaware Supreme Court's decision constituted a reasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d) (2). First, any variances in Scott's testimony during the first and second trials with respect to the date of his residency in Sussex County appear to be inconsistencies in Scott's recollection of events rather than perjurious statements.[3] Second, the record belies McCloskey's claims that Scott lied about McCloskey's involvement in the crimes to get a better "deal" from

---

[3]Moreover, any inconsistency or unclearness in Scott's statements regarding the exact dates of his residing with McCloskey had no legal significance, because Scott testified during both trials that he (Scott) was involved in each crime (with the exception of the motorcycle theft in New Castle County).

the prosecutor. Scott pled guilty and was sentenced prior to McCloskey's first trial and, therefore, any testimony he provided did not affect his sentence. And third, the record fails to support McCloskey's assertion that Scott lied during the second trial by testifying that he recognized the handwriting in a letter as being McCloskey's. During the first trial, when Scott was asked if he recognized the handwriting, Scott replied, "No, but I think I know who wrote it." The trial court then took a break, after which a mistrial was declared. As a result, it is impossible to predict what information Scott would have offered regarding his knowledge of who wrote the letter if the first trial had moved forward. In other words, McCloskey's allegation that Scott provided false information about the handwriting during the second trial cannot be proven.

Given this record, the Delaware Supreme Court reasonably concluded that there was no evidence that Scott gave false testimony or that the State knowingly suborned perjury. Even if Scott contradicted himself, testimonial contradictions, on their own, do not constitute perjury. *Lambert*, 387 F.3d at 249. Thus, McCloskey's claim that the State violated his due process rights through the knowing use of false testimony necessarily fails, because McCloskey cannot show that Scott committed perjury.[4]

Additionally, issues of credibility go to the weight, not the admissibility or discoverability, of testimony,[5] and a "fundamental premise of our criminal trial system is that the jury is the lie detector." *United States v. Scheffer*, 523 U.S. 303, 313 (1998). "Determining the

---

[4]To the extent McCloskey is arguing that Scott should not have been allowed to testify at all because of the *possibility* that he would commit perjury, the argument is similarly unavailing. A defendant's due process rights are only violated when testimony *actually* constitutes perjury and the prosecutor *knowingly* suborns perjury; the fact that a witness may, or actually does, contradict himself does not establish perjury. *See Lambert*, 387 F.3d at 249.

[5]*See Washington v. Texas*, 388 U.S. 14 (1967).

weight and credibility of witness testimony, therefore, has long been held to be the part of every case that belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men." *Id.* Cross-examination is generally regarded as one of the most effective tools for establishing the credibility of a witness, or lack thereof, to a jury. *See Rock v. Arkansas*, 483 U.S. 44, 61 (1987); *United States v. Salerno*, 550 U.S. 317, 328 (1992)("in the Anglo-American legal system cross-examination is the principal means of undermining the credibility of a witness whose testimony is false or inaccurate.")

In this case, Scott offered testimony that was both relevant and material to the charges against McCloskey. Defense counsel cross-examined Scott and highlighted the differences in his testimony regarding the reason for the crimes and if he committed them alone or not. Defense counsel also thoroughly questioned Scott about the affidavit he signed prior to trial stating that he committed the crimes by himself. Defense counsel was able to elicit Scott's explanation as to why he committed the crimes, and explored the fact that Scott was often intoxicated on alcohol, cocaine, or crack cocaine during the period of the crime spree. When viewed in context with this record, McCloskey's conclusory and unsupported allegations of perjury fail to demonstrate that permitting Scott to testify so infected his trial with unfairness that it amounted to a deprivation of due process.

For all of these reasons, the court concludes the Delaware Supreme Court reasonably applied clearly established Federal law in denying McCloskey's allegation that his due process rights were violated when Scott was permitted to testify. Accordingly, the court will deny claim two.

### C. Claim Three: Hearsay Erroneously Admitted At Trial

In his final ground for relief, McCloskey contends that the trial court violated the

confrontation clause and his right to due process by permitting hearsay to be admitted into

evidence at trial. Specifically, McCloskey asserts that the trial court should not have permitted a

police officer to testify about a witness' police statement when that witness did not testify at trial.

McCloskey raised this issue on direct appeal, and the Delaware Supreme Court held that the trial

court properly admitted the evidence.

The statements McCloskey takes issue with were introduced during the State's cross-

examination of the chief investigating officer, who had been called by the defense. Both the trial

court and the Delaware Supreme Court determined that defense counsel, during his direct

examination of the chief investigating officer, "opened the door" to the State's questioning of the

police officer about the hearsay provided by the non-testifying witness by presenting other

hearsay statements by the same non-testifying witness. When McCloskey challenged the

admissibility of the hearsay on direct appeal, the Delaware Supreme Court held that the trial

court properly admitted the evidence, because McCloskey's "opening of the door" permitted the

State to introduce evidence on the same subject.

The Supreme Court has repeatedly stated that "it is not the province of a federal habeas

court to reexamine state-court determinations on state law questions." *Estelle v. McGuire*, 502

U.S. 62, 68 (1991). As a general rule, the "admissibility of evidence is a state law issue,"[6] and

"errors of state law cannot be repackaged as federal errors simply by citing the Due Process

Clause." *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997). Here, even though

---

[6]*Wilson v. Vaughn*, 533 F.3d 208, 213 (3d Cir. 2008).

McCloskey cloaks his challenge to the Delaware state courts' ruling in terms of due process and confrontation clause violations, he is really challenging an evidentiary ruling.   Therefore, the court is not persuaded that this claim even asserts a claim cognizable on habeas review.

Nevertheless, to the extent claim three does raise a cognizable due process or confrontation clause issue, the court concludes that the Delaware Supreme Court's decision does not warrant relief under § 2254(d).  First, given McCloskey's failure to provide clear and convincing evidence to the contrary, the court must defer to the Delaware Supreme Court's factual determination that McCloskey "opened the door" to the admission of the hearsay at issue. *See* 28 U.S.C. § 2254(e).  In turn, McCloskey has not cited, and the court has not found, any Supreme Court precedent clearly establishing that evidence admitted in response to the defense's "opening the door" violates due process or the confrontation clause.[7] *See  Keller v. Larkins*, 251 F.3d 408, 416 n.2 (3d Cir. 2001)(a court is "limited to deciding whether the admission of the evidence rose to the level of a due process violation.").  Thus, the court cannot conclude that the Delaware State Court's rejection of McCloskey's hearsay claim was either contrary to, or involved an unreasonable application of, clearly established Federal law.  Accordingly, the court will deny claim three.

---

[7]Although the Supreme Court held in *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004) that the confrontation clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant has had a prior opportunity for cross-examination," the *Crawford* Court also held that the confrontation clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id*. at 59 n.9.  Significantly, "both before and after *Crawford*, federal courts [have] found no confrontation clause violation where the defendant 'opened the door' to hearsay evidence." *See Caines v. Ricci*, 2012 WL 4743128, at *6-*7 (D.N.J. Oct. 2, 2012)(collecting cases).

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that McCloskey's petition fails to warrant federal habeas relief. The court is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, McCloskey's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.